**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

BRIAN STRAYER, et al.,

       Plaintiffs,

          v.

DOUGLAS BARE, et al.,

       Defendants.

CIVIL ACTION NO. 1:06-CV-2068

(JUDGE CAPUTO)

<u>**MEMORANDUM**</u>

Presently before the Court are four pending motions in this matter which is scheduled for trial on July 9, 2012.

The first three motions are *in limine* and pertain to documents which have only been very recently brought to the Plaintiffs' attention.  In the first such motion addressed, the Plaintiffs have moved to impose sanctions against Defendant Douglas Bare for the non-production of these documents and the computer server they were discovered on.  (Doc. 294.)  This motion will be denied as I find that Defendant Bare was under no obligation to produce these documents to the Plaintiffs since he has signaled no intention of using them at trial.  Yet, for that very same reason, these documents are not available for use as substantive evidence at trial and I will therefore grant the second motion addressed: Third-Party Defendant Stambaugh to exclude the documents at trial.  (Doc. 289.)  In the third motion *in limine*, the Plaintiffs have moved to file an additional complaint directly against Third-Party Defendant Stambaugh based on the new information apparently contained within these documents.  Since I find that it would not be in the interest of justice to allow such

amendment at this late date, this motion will be denied without prejudice.

Finally, the fourth motion is for reconsideration of an earlier order denying summary judgment as to an assignment of claims from a third-party plaintiff to a first-party plaintiff. Since the Plaintiffs have expressed that they do not oppose this motion, it will be granted as unopposed.

## BACKGROUND[1]

At issue in this lawsuit are client settlement funds unpaid by the former law firm Frankel & Associates P.C. ("the Firm").  It is undisputed that from September 2000 through October 2004, former-attorney Mark David Frankel perpetuated a fraud through the Firm's escrow account, whereby in excess of $1 million was converted from a number of clients to pay the Firm's tax obligations.  Plaintiffs Brian Strayer, one of the Firm's former clients injured through this fraud, and the Pennsylvania Lawyers Fund for Client Security,[2] initiated this action on October 20, 2006 contending, in pertinent part, that "Defendants Cunningham and Bare were aware of and failed to take steps to prevent the Ponzi Scheme involving clients' funds."  (Second Am. Compl. at ¶ 97, Doc. 60.)  Claims were asserted against the Defendants for fraud, breach of fiduciary duty, bad faith, a violation of Pennsylvania's Unfair Trade Practice and Consumer Protection Law, 73 P.S. § 201-1, *et seq.*, as well as a civil

---

[1] This matter has an elaborate history, and the events outlined in this section have been simplified for the purposes of the present motions.  However, for a more detailed history of this case, see Judge Munley's January 6, 2010 Memorandum.  *Strayer v. Bare*, No. 3:06cv2068, 2010 WL 95123 (M.D. Pa. Jan. 06, 2010).

[2] "Plaintiff Pennsylvania Lawyers Fund for Client Security is a nonprofit entity that was established by Order of the Pennsylvania Supreme Court dated April 30, 1992, to reimburse clients who have suffered losses as a result of misappropriation of funds by their Pennsylvania attorney with its principal place of business located at 4909 Louise Drive, Suite 101, Mechanicsburg, PA 17055."  (Second Am. Compl. at ¶ 2, Doc. 60.)  The Fund brings this action against Defendant Bare on behalf of twenty-six (26) former firm clients who also claimed missing settlement funds as a result of alleged misappropriation of client funds.

claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c)-(d).  Wachovia bank, the operator of the Firm's client trust account, was also named as a party.  Following Judge Munley's January 6, 2010 Memorandum and Order, *Strayer v. Bare*, No. 3:06cv2068, 2010 WL 95123 (M.D. Pa. Jan. 06, 2010), the only remaining claims and parties in the primary action were claims for conspiracy, conversion, and civil RICO as against Defendants Bare and Cunningham.

On August 11, 2008, Defendants Bare and Cunningham filed a Third-Party Complaint against Steven Stambaugh, the lawyer who represented Mr. Strayer in his original personal injury case, and Anita Livaditis, the Firm's bookkeeper ("the Third-Party Defendants"). (Third-Party Compl., Doc. 120.)   In their Third-Party Complaint, Bare and Cunningham denied all liability as neither had actually represented Strayer or any of the Fund claimants, and sought contribution or indemnification from Stambaugh and Livaditis who, "at all relevant times, knew or should have known of the existence of the Ponzi scheme and failed to take steps to prevent the Ponzi scheme."  (*Id.* at ¶¶ 10-11, 44-45.)

In August of 2011 the Plaintiffs settled with Defendant Darryl Cunningham rendering Defendant Douglas Bare as the sole Defendant in the primary suit.  However, I ruled on April 4, 2012 that the Cunningham Release did not extinguish Cunningham's third-party claims and that Cunningham successfully assigned those claims to the Plaintiffs on December 22, 2011 in conformance with the Pennsylvania Uniform Written Obligations Act.  This decision is subject to a pending motion for reconsideration.  Later, in April of 2012, the Plaintiffs were made aware of the existence of documents derived from the Firm's computer server, which triggered the three instant motions *in limine*.  On June 25, 2012, a hearing was conducted and oral argument was made in which all of these motions were at least partially addressed.

As such, these motions are now ripe for the Court's review.

## DISCUSSION

### I.      Plaintiffs' Motion to Impose Sanctions against Defendant Bare (Doc. 294)

Defendant Bare admits to receiving a computer server from the Firm around December of 2008 and to downloading various documents from it without advising the Plaintiffs' Counsel.  (Def.'s Resp. at ¶¶ 2-5, Doc. 299.)  The Plaintiffs argue that this possession alone imposed a duty on Defendant Bare to share the information on that server with the Plaintiffs' Counsel.  Defendant Bare retorts that any documents gleaned from the server were unresponsive to the Plaintiffs' document requests,[3] and that withholding them did not constitute a violation of Federal Rule of Civil Procedure 26 as "Bare did not and does not have any intention and/or expectation to use the documents at trial" and as the "the documents at issue have nothing to do with Bare."  (Def.'s Resp. at ¶ 4, Doc. 299.)

Although the Plaintiffs have broadened the issue as to encompass "whether or not Defendant Bare had a duty to disclose that he was in possession of the computer server that obviously held documents relevant to this litigation" (Pls.' Br. at 4, Doc. 306.), the particular documents that triggered the instant motion include an apparent addendum to Third-Party Defendant Stambaugh's Will and an August 19, 2003 memorandum allegedly authored by Stambaugh.  Plaintiffs represent that Stambaugh has acknowledged the existence of these documents, but has claimed that they were both altered.  (Mot. At ¶ 14, Doc. 294.)  Moreover, at the June 25 hearing, Stambaugh specifically denied that he was the author of

---

[3] These document requests appear to request "Copies of Federal Income Tax Returns for 1999, 2000, 2001 and 2002" and "Copies of any agreements entered into at the time of his leaving employment of Frankel & Associates, P.C. in 2002."  (Def.'s Ex. B, Doc. 299-1.)

the instant memorandum.

The Addendum to Stambaugh's Will states, in pertinent part:

> Frankel & Associates, P.C. owes me money. I question whether my estate will ever see it given recent revelations and my suspicions as to what the Frankels may have done with firm assets prior to Mark's disbarment. In any event, I loaned the firm $40,000.00 to buy the firm's computers in addition to which I have not received any of my 40% bonus for cases settled in 2004. Darryl Cunningham can confirm the 40% bonus agreement.

(Pls.' Ex. C, Doc. 294-3.)  Additionally, the relevant portion of the Memorandum dated August 19, 2003 states:

> We all have Jerry Levans' memo of even date. He is correct - this situation can not continue. Unfortunately, the 401k issue is but one of several issues. For example, client funds are often not released on the 22nd day as stated in the notices given to clients. While the situation with client funds has improved dramatically from what it had been, some room for improvement remains. If indeed a problem exists with any individual check, Anita should notify the responsible attorney, who can then in turn notify the client. Simply saying that the funds are not available will not do.

(Pls.' Ex. D, Doc. 294-4.)

First, the Plaintiffs argue that these two documents would have been responsive to Third-Party Defendant Steven Stambaugh's request for production of documents.  While Defendant Bare had asserted that there had been an standing agreement with Stambaugh's previous counsel "that they would not seek discovery from each other nor enforce their rights with regard to any outstanding discovery" (Def.'s Resp. at ¶ 8, Doc. 299), there was no testimony at the hearing that any such agreement actually existed.  However, it was established that Stambaugh never moved to compel responses to his requests and interrogatories.  I therefore find that any such discovery requests were abandoned and that this line of argument is therefore unhelpful to the Plaintiffs' position.  Further, even if such discovery were required, I query how the Plaintiffs would have any standing to enforce a

discovery request made by Third-Party Defendant Stambaugh.

Instead, as mentioned above, the Plaintiffs' brief argues more generally that "when Defendant had control of the computer server upon which was contained other evidence vital to the case, he had a duty to disclose its existence to other counsel." (Pls.' Br. at 4, Doc. 306.) In support of this assertion, Plaintiffs cite other documents they have since recovered from the server which apparently suggest accounting issues within the Firm, which the Plaintiffs argue would have been useful in deposing Defendant Bare and Third-Party Defendant Stambaugh. Plaintiffs also argue that Stambaugh has represented that these documents have been altered and that a forensic expert has confirmed such manipulation "at or about the time that Defendant Bare admits that the server was in his possession in 2008." (Doc. 302 at ¶ 3.) As such, the Plaintiffs request that discovery be reopened for further depositions, that they be compensated by Defendant Bare for the costs of the depositions and a forensic computer expert, and the imposition of reasonable attorney's fees.

Federal Rules of Civil Procedure Rule 26(a) requires minimally a description of "all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii). Similarly, Rule 26(e) makes this as an ongoing requirement, mandating supplemental disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). However, as the Advisory Committee note to Rule 26 makes clear, "[a] party is no longer obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use."

Fed. R. Civ. P. 26 advisory committee's note.  This is in stark contrast to an earlier version of the Rule–relied on by the Plaintiffs in their brief–which required an initial disclosure containing all documents "relevant to disputed facts alleged."  *Tarlton v. Cumberland County Corr. Facility*, 192 F.R.D. 165, 168 (D.N.J. 2000) (citing Fed. R. Civ. P. 26(a) (2000)). Instead, the text of the current Rule points squarely to the relevant inquiry: whether the materials in question are something "that the disclosing party . . . *may use* to support its claims or defenses."  Fed. R. Civ. P. 26(a)(1)(ii) (emphasis added); *see also Gomas v. City of New York*, 07-CV-4179 (ARR), 2009 WL 962701, at *2 (E.D.N.Y. Apr. 8, 2009) (noting that the "general scope of discovery" is irrelevant to initial disclosures as the issue is not whether the information is discoverable, but whether the information may be used to support a party's claims or defenses); *Yaccarino v. Motor Coach Indus., Inc.*, 03-CV-4527CPS, 2006 WL 5230033, at *6 (E.D.N.Y. Sept. 29, 2006) (finding that Rule 26 does not mandate disclosure for evidence not sought to be admitted at trial and that the plaintiffs "could and should have made timely demands" for the materials); *Ruddell v. Weakley County Sheriff's Dept.*, 1:07-CV-01159-JDB, 2009 WL 7355081, at *1 (W.D. Tenn. May 22, 2009) (emphasis supplied) ("The plain language of the Rule makes clear that the disclosing party must only disclose materials if *that party* intends to use the materials to support its claims or defenses.").

Here, there is no indication that Defendant Bare actually intended to admit the proffered evidence at trial and Bare admits in his brief that he "has no intention of using the documents in question at trial."  (Def.'s Br. at 10, Doc. 311.)  Moreover, if Defendant Bare did attempt to use any such evidence at trial, Rule 37 would preclude the use of that evidence unless the failure to disclose under Rule 26 was "was substantially justified or is

harmless." Fed. R. Civ. P. 37(c)(1).  Therefore, because Bare has affirmatively expressed that he is not intending to use the evidence at trial, and because he will be precluded from introducing any such evidence unless substantially justified, I find that there was no legal duty requiring Defendant Bare to have surrendered these documents to the Plaintiff.

Finally, to any extent the Plaintiffs argue that this disclosure was mandated on the Local Rules of the Middle District of Pennsylvania, this reliance is misplaced.  Plaintiffs cite Local Rule 26.1, which mandates that electronically stored information shall be disclosed like any other "information, files or documents stored by any other means" and further requires that "[c]ounsel shall attempt to agree on steps the parties will take to segregate and preserve electronically stored information in order to avoid accusations of spoliation."  Local Rule 26.1(b) & (c)(1).  While this Rule explicitly states that electronic information should be treated like any other, it merely sets out requirements that parties cooperate in establishing steps to avoid spoliation.  The issue here is not that any party destroyed evidence, but that they withheld it and this Rule is therefore inapplicable.

As Defendant Bare was under no obligation to produce these documents, there is no basis for the imposition of sanctions.  The Motion will be denied.

## II.     Third-Party Defendant Stambaugh's Motion *In Limine* to Exclude Late Production of Documents (Doc. 298)

Third-Party Defendant Stambaugh has filed a motion seeking to exclude the two documents referred in the preceding section: the Addendum to Stambaugh's Will and the Memorandum allegedly authored by Stambaugh.  Stambaugh represents that, even though this matter has been listed for trial on three prior occasions, the Third-Party Plaintiff and the Plaintiffs (presumably through assignment of the Cunningham's third-party claim) have

signaled their intention to introduce these documents at trial for the first time on April 26, 2012–more than three years after the close of discovery.  Neither the Defendant nor the Third-Party Plaintiffs have made any previous disclosures pursuant to Federal Rule of Civil Procedure 26 containing the two documents at issue.

Stambaugh avers that these documents should have been turned over long ago in order for them to be used at trial[4] and further takes issue with the relevancy and the authenticity of these two documents.  As such, Stambaugh seeks to have the documents "stricken for any and all purposes including use at trial."  (Mot. at ¶ 26, Doc. 289.) Stambaugh, however, has attached an email from Jay Kagan (Third-Party Plaintiff Bare's Counsel) to Richard Wix (Plaintiffs' Counsel) indicating that he would not be using the documents at trial, "other than, if necessary, for impeachment purposes." (Ex. E, Doc. 289-2.)

No brief in opposition has been filed to this Motion and no oral argument was actually heard on this motion, although it was scheduled.  (*See* the Court's Orders from June 12, 2012 and May 9, 2012.)  However, I agree with Stambaugh's assertion that–to any extent any party in this case would want to use these documents to support their claims and defenses–it would have been necessary to have disclosed them previously.  *See* Fed. R. Civ. P. 26(a)(1)(A)(ii), *supra* (requiring disclosure of "all documents . . . the disclosing party . . . may use to support its claims or defenses, unless the use would be solely for impeachment").  Rule 37 precludes the use of such undisclosed material for a substantive purpose barring a substantial justification or harmlessness.  Fed. R. Civ. P. 37(c)(1)(A).  To

---

[4]Of course, as noted in the previous section, Stambaugh did not pursue his requests for production and for interrogatories and they are therefore abandoned.  To any extent these requests serve as a basis to the instant motion, they are unhelpful.

determine whether such a justification exists, courts shall look to: (1) "the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified"; (2) "the ability of that party to cure the prejudice"; (3) "the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or other cases in the court"; (4) "bad faith or wilfulness in failing to comply with the district court's order" and; (5) "the importance of the excluded testimony." *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (citations omitted.)  In the absence of affirmative argument in support of admitting the evidence, I am compelled to find no affirmative justification to admit these documents.

As a final matter, I note that the materials may be used "solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii).  There are, however, authenticity issues which may preclude such use.  In particular, Stambaugh explicitly disclaimed authorship of the Memorandum at the June 25 hearing, and it is difficult to imagine who else would be capable of authenticating such a document.  However, at this juncture, it is sufficient to note that use of these documents at trial for impeachment purposes would require sufficient authentication.

Therefore, while reserving for trial the determination as to whether these documents may be used for impeachment, these two documents are properly excluded for substantive purposes and Third-Party Defendant Stambaugh's Motion will be granted.

### III.   Plaintiffs' Motion to File a Complaint Against Third-Party Defendant Stambaugh Pursuant to Federal Rules of Civil Procedure Rule 14(a)(3) (Doc. 291)

Over five years after initially filing suit, the Plaintiffs today seek to amend their claim by filing an additional claim against Third-Party Defendant Stambaugh–Strayers former

attorney at the Firm–pursuant to Federal Rule of Civil Procedure 14(a)(3).[5]

Strayer argues that, in reasonably relying on Stambaugh's representations, he "believed that Steven Stambaugh had no responsibility for the loss if [sic] his monies and, therefore, made the determination not to institute a legal action against Steven Stambaugh." (Mot. at ¶ 5, Doc. 291.)  However, Strayer represents that the recent unearthing of the two documents referenced in the above sections has provided a previously undiscovered basis for the Plaintiffs to file suit directly against Third-Party Defendant Steven Stambaugh. Further, the Plaintiffs believe that because the "[t]he documents were wrongly withheld . . . and because of the false representations made[,] the statue of limitations did not start to run on any claims against Steven Stambaugh until April 19, 2012, because of the discovery rule." (Mot. at ¶ 7, Doc. 291.)

"The discovery rule is a judicially created device which tolls the running of the applicable statute of limitations until the point where the complaining party knows or reasonably should know that he has been injured and that his injury has been caused by another party's conduct." *Pulli v. Ustin*, 24 A.3d 421, 425 (Pa. Super. Ct. 2011) (quoting *Coleman v. Wyeth Pharmaceuticals, Inc.*, 6 A.3d 502, 510 (Pa. Super. Ct. 2010)).  The purpose of the rule was initially to toll the statute of limitation where "the injury or its cause was neither known nor reasonably knowable" and "to exclude from the running of the statute of limitations that period of time during which a party who has not suffered an immediately ascertainable injury is reasonably unaware he has been injured." *Fine v. Checcio*, 870 A.2d

---

[5]Rule 14 provides that a "plaintiff may assert against the third-party defendant any claim arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff. The third-party defendant must then assert any defense under Rule 12 and any counterclaim under Rule 13(a), and may assert any counterclaim under Rule 13(b) or any crossclaim under Rule 13(g)."  Fed. R. Civ. P. 14(a)(3).

11

850, 858 (Pa. 2005) (citations omitted).  Through its evolution, "the salient point giving rise to its application is the inability of the injured, despite the exercise of reasonable diligence, to know that he is injured and by what cause." *Id.*  By its operation the statute of limitations "is tolled, and does not begin to run until the injured party discovers or reasonably should discover that he has been injured and that his injury has been caused by another party's conduct." *Id.* at 859. "Where the issue in a case involves a factual determination of what constitutes a reasonable time for the plaintiff to discover his/her injury and its cause, this issue is usually for the jury." *Toy v. Metro. Life Ins. Co.*, 863 A.2d 1, 7 (Pa. Super. Ct. 2004) *aff'd*, 928 A.2d 186 (Pa. 2007) (citation omitted).   Conversely, "[w]hen information is available, the failure of a plaintiff to make the proper inquiries is failure to exercise reasonable diligence as a matter of law." *Kingston Coal Co. v. Felton Min. Co., Inc.*, 690 A.2d 284, 289 (Pa. Super. Ct. 1997) (citing *Colonna v. Rice*, 664 A.2d 979, 981 (Pa. Super. Ct. 1995)).

At this late date, I find that allowing the Plaintiffs to amend their Complaint to assert a direct claim against Third-Party Defendant Stambaugh would not be in the interest of judicial economy and I will deny it. Moreover, I find that denying such amendment will cause no prejudice to the Plaintiffs since they are free to file a separate complaint against Steven Stambaugh and to pursue these statute of limitations arguments in that separate proceeding. As such, I will not address the merits of the discovery rule but will reserve this determination to the court ultimately weighing the viability of such a claim.  Today, however, I will not allow leave to assert this claim and the motion will be denied.

### IV.   Alternative Motions of Third Party-Defendant, Steven Stambaugh, for Reconsideration and/or Relief Pursuant to Rules 1, 50 and 60 (Doc. 309.)

This motion is essentially the second motion for reconsideration of my April 4, 2012 Order denying the Third-Party Defendants' motion for summary judgment. *See Strayer v. Bare*, 1:06-CV-2068, 2012 WL 1132491 (M.D. Pa. Apr. 4, 2012).  In that Memorandum, I specifically held that the Plaintiffs' release of Defendant Cunningham did not extinguish Cunningham's third-party claims and that Cunningham had successfully assigned those third-party claims to the Plaintiffs in conformance with the Pennsylvania Uniform Written Obligations Act.  Stambaugh first objected to this Order in a motion *in limine.*  (Doc. 288.) I construed that motion *in limine* as motion for reconsideration which I then dismissed for non-compliance with Middle District Local Rule 7.10 as it was not accompanied by a supporting brief and was untimely.  On May 11, 2012, Stambaugh filed the instant motion again seeking reconsideration of the underlying denial of summary judgment.

At the June 25 hearing, the Plaintiffs represented that they would not be opposing this motion as Plaintiffs' Counsel indicated that he agrees that the assignment is of no legal significance.   Thus, I will grant Third-Party Defendant Stambaugh's Motion for Reconsideration (Doc. 309) and will vacate the April 4, 2012 Memorandum and Order denying summary judgment (Docs. 283 & 284.)  Instead, I will grant Third-Party Defendants Steven Stambaugh and Anita Livaditis' Motion for Summary Judgment as to Defendant / Third-Party Plaintiff Darryl Cunningham's third-party Claims.  (Doc. 278.)

### CONCLUSION

As the documents at issue have not been previously presented, their use at trial is precluded and I will grant Third-Party Defendant Stambaugh's Motion *In Limine* to Exclude

Late Production of Documents (Doc. 298).  There is, however, no basis for sanctions and Plaintiffs' Motion to Impose Sanctions against Defendant Bare (Doc. 294) will be denied.  I will also deny Plaintiffs' Motion to File a Complaint Against Third-Party Defendant Stambaugh Pursuant to Federal Rules of Civil Procedure Rule 14(a)(3) (Doc. 291) as I do not believe that such amendment would be in the interest of justice.  Finally, I will grant Third Party-Defendant Stambaugh's Motion for Reconsideration and/or Relief Pursuant to Rules 1, 50 and 60 (Doc. 309) as unopposed.  An appropriate order follows.


 June 28, 2012                               /s/ A. Richard Caputo
Date                                        A. Richard Caputo
                                           United States District Judge